NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 29, 2015[*]
Decided November 30, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 15-1543

| | |
|---|---|
| YIXING REN,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A089-695-530 |
| LORETTA E. LYNCH,<br>Attorney General of the United States,<br>    *Respondent*. | |

## O R D E R

Yixing Ren, a Chinese citizen who already had been denied asylum and removed from the United States, returned without authorization and a decade later applied again for asylum (as well as withholding of removal) based on the alleged mistreatment he experienced in China as a result of his practice of Falun Gong. An immigration judge characterized Ren's asylum application as frivolous and denied all relief, and the Board of Immigration Appeals upheld the ruling. We lack jurisdiction to review the denial of

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. The appeal is thus submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

Ren's application for asylum, and substantial evidence supports the denial of withholding. We thus dismiss the petition in part and deny it in part.

Ren by now ought to be familiar with this country's immigration system. In 1996 his application for asylum—based on his alleged involvement in an anticommunist student movement—was denied, and he was removed to China. He reentered the United States without inspection in 1998. Ten years later, in 2008, he again applied for asylum as well as for withholding of removal; this time he claimed that he had been persecuted in China because of his practice of Falun Gong. He pinpointed the dates of persecution as taking place before his first entry to the United States in 1996—when he lost his postal-service job, and was beaten, tied up, and detained—and during the two-year interval (from late 1996 to 1998) after he was returned to China—when, he says, his practice of Falun Gong led to his mother being tortured to death and his being detained for 14 days. During these two years, Ren counted four additional encounters with Chinese police (though he testified that he was able to avoid additional beatings).

The removal proceedings were protracted, and the IJ conducted several hearings between 2009 and 2012 before eventually denying all relief. She explained that Ren was statutorily barred from asylum relief because he did not file his application within one year of arriving in the United States, see 8 U.S.C. § 1158(a)(2)(B); he already had filed an asylum application that was denied, see *id.* § 1158(a)(2)(C); and he did not show that changed or extraordinary circumstances affected his eligibility for asylum, *id.* § 1158(a)(2)(D). She denied Ren's request for withholding based on inconsistencies in the asylum applications that he filed in 1996 and 2008, as well as in his oral and written statements concerning the 2008 application. The IJ found Ren not credible in large part because he omitted any mention of his Falun Gong practice from his 1996 asylum application. She disbelieved his testimony that an immigration officer at John F. Kennedy International Airport in New York City had prevented him from telling his story during the airport interview by threatening his life and telling him to "shut up." The IJ also mentioned that Ren had testified inconsistently about key dates in the two asylum applications, and she noted key omissions in his written statement about matters that he addressed in his oral testimony—for instance his statement that villagers beat his mother because he practiced Falun Gong. Based on those inconsistencies, the IJ determined that Ren deliberately had fabricated portions of his asylum application, and she found the application frivolous, see *id.* § 1158(d)(6); 8 C.F.R. § 1208.20, permanently disqualifying Ren from most forms of immigration relief. The BIA upheld the IJ's ruling.

In his petition for review, Ren states generally that the BIA erred in dismissing his challenge to the denial of his second application for asylum. But we lack jurisdiction to review the IJ's factual finding that the untimely second filing was not justified by changed or extraordinary circumstances. See 8 U.S.C. § 1158(a)(3); *Yang v. Holder*, 760 F.3d 660, 664–65 (7th Cir. 2014).

Ren next challenges the denial of his request for withholding of removal and insists that he provided plausible explanations for any discrepancies in his story. But the IJ was not required to accept Ren's explanations if there was a different permissible view of the evidence, see *Surganova v. Holder*, 612 F.3d 901, 904 (7th Cir. 2010); *Krishnapillai v. Holder*, 563 F.3d 606, 618 (7th Cir. 2009), and there was ample support in the record for the IJ's adverse credibility finding. As the IJ noted, Ren lied when he stated that his earlier asylum application was based on his practice of Falun Gong, when in fact the earlier application does not mention Falun Gong. Moreover, Ren provided directly conflicting accounts for significant events that happened to him in the first half of 1996. Ren testified in 2011, for instance, that he was fired from his postal-service job in March 1996, applied for a passport in China the following month, and was beaten by villagers one month after that; according to his 1996 asylum application, however, he was living in Hong Kong and Ecuador at this time. Finally, Ren omitted from his written application several details (related to his detention after his return to China and persecution his family faced) that he presented in his oral testimony. The IJ was entitled to conclude that Ren was trying to embellish the basis for his withholding claim. See *Toure v. Holder*, 624 F.3d 422, 429 (7th Cir. 2010); *Hassan v. Holder*, 571 F.3d 631, 638 (7th Cir. 2009).

Ren next challenges the IJ's determination that his asylum application is frivolous—a determination that makes him permanently ineligible for most kinds of immigration relief. See 8 U.S.C. § 1158(d)(6); 8 C.F.R. § 1208.20. But sufficient evidence in the record supports the IJ's finding that Ren knowingly submitted a frivolous asylum application. See 8 C.F.R. § 1208.20. Ren twice was warned of the consequences of lying on his application materials. See *Albu v. Holder*, 761 F.3d 817, 820–21 (7th Cir. 2014); *Pavlov v. Holder*, 697 F.3d 616, 618 (7th Cir. 2012). Despite those warnings, he gave testimony in 2011 and 2012 that conflicted with the materials from his 1996 asylum application and lied (as already noted) about whether Falun Gong was a basis of that application. The numerous and material inconsistencies in his applications, including the changed bases for asylum relief and discrepancies concerning his whereabouts and practice of Falun Gong in the first half of 1996, support the IJ's conclusion that Ren

deliberately fabricated parts of his story. See *Siddique v. Mukasey*, 547 F.3d 814, 816–17 (7th Cir. 2008).

Accordingly, we DISMISS the petition for review with respect to Ren's asylum application and otherwise DENY the petition.